UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ALBERT WILFRED GENDRON,

        Petitioner,

v.                                Case No:  5:18-cv-165-TPB-PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

        Respondents.

_____/

**ORDER DENYING THE PETITION AND
DISMISSING CASE WITH PREJUDICE**

## I.    Status

Petitioner, Albert Wilfred Gendron, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Petitioner challenges a state court (Citrus County, Florida) judgment of conviction. Respondents filed a Response (Doc. 20).[1] Petitioner replied (Doc. 33) and filed supplemental exhibits to his Reply (Doc. 38). This case is ripe for review.

## II.    Procedural History

On February 3, 2015, a jury convicted Petitioner of possession of a firearm by a convicted felon (count one) (Resp. Ex. A at 166). The next day, another jury found Petitioner guilty of shooting at or into an occupied vehicle (count two), possession of

---

[1] In support of their Response, Respondents filed several exhibits (Doc. 22). The Court cites the exhibits as "Resp. Ex."

cannabis with intent to sell or deliver (count three), and possession of paraphernalia (count four) (Resp. Ex. A at 205-07). The trial court sentenced Petitioner to a fifteen-year term of incarceration, with a three-year minimum mandatory, as to count one and count two; a five-year term as to count three; and time served as to count four (*id.* at 226-40). Petitioner appealed and with help from appellate counsel, he filed an initial brief (Resp. Ex. D) under *Anders v. California*, 386 U.S. 738 (1967). The Fifth District Court of Appeal per curiam affirmed Petitioner's judgment and convictions without a written opinion (Resp. Ex. J).

Later, Petitioner filed with the trial court a pro se Florida Rule of Criminal Procedure 3.850 motion for postconviction relief (Resp. Ex. S), raising twenty-five grounds for relief. The trial court summarily denied the Rule 3.850 motion (Resp. Ex. R). Petitioner appealed, and the Fifth DCA per curiam affirmed the trial court's summary denial without a written opinion (Resp. Ex. V). Petitioner also filed a petition with the Fifth DCA alleging ineffective assistance of appellate counsel (Resp. Ex. Z). The Fifth DCA denied the petition on the merits (Resp. Ex. HH). Petitioner then filed the Petition (Doc. 1) raising three Grounds for relief, with Ground Two and Ground Three containing multiple Sub-Claims.

## III.   Governing Legal Principles

### A. Standard of Review Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. *See Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016). "'The

purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Id.* (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. *See Marshall v. Sec'y Fla. Dep't of Corr.,* 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." *Id.* § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-

court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* [at 102] (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *Lockyer*, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Williams v. Taylor*, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

*Bishop v. Warden, GDCP*, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. *See* 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S.

838, 845 (1999); *see also Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) (noting

"that *Boerckel* applies to the state collateral review process as well as the direct

appeal process.").

A state prisoner's failure to properly exhaust available state remedies leads

to a procedural default which raises a potential bar to federal habeas review. The

United States Supreme Court has explained the doctrine of procedural default as

follows:

> Federal habeas courts reviewing the constitutionality of a
> state prisoner's conviction and sentence are guided by rules
> designed to ensure that state-court judgments are accorded
> the finality and respect necessary to preserve the integrity
> of legal proceedings within our system of federalism. These
> rules include the doctrine of procedural default, under
> which a federal court will not review the merits of claims,
> including constitutional claims, that a state court declined
> to hear because the prisoner failed to abide by a state
> procedural rule. *See, e.g., Coleman*,[2] 111 S. Ct. 2546;
> *Sykes*,[3] 97 S. Ct. 2497. A state court's invocation of a
> procedural rule to deny a prisoner's claims precludes
> federal review of the claims if, among other requisites, the
> state procedural rule is a nonfederal ground adequate to
> support the judgment and the rule is firmly established
> and consistently followed. *See, e.g., Walker v. Martin*, 131
> S. Ct. 1120, 1127-1128, (2011); *Beard v. Kindler*, 130 S. Ct.
> 612, 617-618 (2009). The doctrine barring procedurally
> defaulted claims from being heard is not without
> exceptions. A prisoner may obtain federal review of a
> defaulted claim by showing cause for the default and
> prejudice from a violation of federal law. *See Coleman*, 111
> S. Ct. 2546.

---

[2] *Coleman v. Thompson*, 501 U.S. 722 (1991).

[3] *Wainwright v. Sykes*, 433 U.S. 72 (1977).

*Martinez v. Ryan*, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused in some cases. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 687.

Further, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*,

562 U.S. at 105. As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." *Id.* (citing *Richter*, 562 U.S. at 105); *see also Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1333-35 (11th Cir. 2013); *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004).

## IV.   Analysis

### A. Ground One

Petitioner asserts that police coerced him into signing a "consent to search" and also coerced him into "giv[ing] a confession" (Doc. 1 at 5). According to Petitioner, police handcuffed him, placed him in a police cruiser, turned the heat on high, and waited three hours until Petitioner agreed to the police search and gave a confession (*id.*).

Petitioner contends that he exhausted this claim in state court by raising it in his Rule 3.850 motion and then appealing the trial court's subsequent denial to the Fifth DCA (*id.* at 6). In his Rule 3.850 motion, Petitioner raised one challenge to the trial court's denial of his motion to suppress (Resp. at 7-8). In ground eighteen of his Rule 3.850 motion, Petitioner asserted that the trial court erred in denying his motion to suppress because police placed Petitioner in the cruiser with the windows

up and the heater "running on the last calendar day of June. . . . [S]low cooking the [Petitioner] into confessing" (Resp. Ex. S at 15-16). The trial court summarily denied the claim, finding the following in relevant part:

> In Ground[] Eighteen . . . the Defendant contends he is entitled to relief due to trial court errors. The Defendant claims trial counsel erroneously denied his motion to suppress . . . . However, allegations of trial court error are not cognizable in a collateral attack on the sentence. *See Smith v. State*, 445 So. 2d 323 (Fla. 1983); *see also Hodges v. State*, 885 So. 2d 338, 366 (Fla. 2004) (holding that claims of trial court error should be raised on direct appeal, not in a rule 3.850 motion). Accordingly, Ground[] Eighteen . . . [is] without merit as a matter of law.

Resp. Ex. R at 10. The Fifth DCA affirmed the trial court's summary denial without a written opinion (Resp. Ex. V).

A procedural default may result from non-compliance with state procedural requirements. *See Coleman*, 501 U.S. at 729-30. Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule. *Wainwright v. Sykes*, 433 U.S. 72, 85-86 (1977). The procedural bar imposed in Petitioner's case is firmly established and regularly followed in the Florida courts. *See* Fla. R. Crim. P. 3.850(7); *Teffeteller v. State*, 734 So. 2d 1009, 1016 (Fla. 1999) (holding substantive claims procedurally barred because they could have been raised on direct appeal); *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Because the state court declined to consider the merits of this claim, finding such claims of trial court error are not

cognizable on collateral review, the claim is now procedurally defaulted and barred from this Court's consideration. And Petitioner does not establish cause for and prejudice from this default,[4] nor does he show a fundamental miscarriage of justice.

The Court also finds that the claim is barred from consideration under *Stone v. Powell*, 428 U.S. 465 (1976). "[W]hen the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. To be entitled to federal habeas review of a Fourth Amendment claim, Petitioner must show that he "was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." *Id.* at 495 n.37. Florida provides an opportunity for the full and fair litigation of Fourth Amendment claims, *see* Fla. R. Crim. P. 3.190(g), and Petitioner availed himself of that opportunity.

The record shows that before trial, the trial court conducted a hearing on the motion to suppress, during which it heard testimony from Petitioner and the six police officers involved in Petitioner's arrest and the taking of his post-arrest statements (*see generally* Resp. Ex. C). On the day of the incident, officers responded to a "shots fired" 911 call at the Bell Villa Hotel (*id.* at 7-8). Upon arrival, witnesses pointed officers to a room where they found shell casings nearby and Petitioner and a woman, Robina Quinn, inside the room (*id.* at 15-19). As police removed them from the hotel room, Petitioner cooperated with officers and orally

---

[4] In their Response, Respondents fail to acknowledge the Court's obligations under AEDPA to defer to the state court's adjudication and imposition of an independent state procedural rule.

consented to a search of the room, and when Quinn refused to consent, Petitioner
became aggressive and angry with her, encouraging police to conduct the search
anyway and offering to personally walk officers through the room despite Quinn's
refusal (*id.* at 18-20, 58). Police then handcuffed Petitioner and placed him in a
police cruiser while officers sought to get a search warrant due to Quinn's refusal
(*id.* at 23-24, 100-01). Officers testified that while Petitioner was in the cruiser, the
vehicle was on, the air conditioning was running, causing condensation on the
windows; Petitioner never complained to the officers about being too hot; and did
not show any signs of distress due to heat (*id.* at 24-25, 32, 34, 44). In fact, when
officers went to remove Petitioner from the vehicle thirty to forty-five minutes later,
police found him calmly sleeping in the backseat (*id.* at 109-10). Petitioner then
repeated his earlier statement to police that he had just met Quinn, she had only
been in his room for a few hours, and she had no right to grant or withhold consent
to search (*id.* at 115).

Petitioner then executed a written consent to search form and gave a
recorded statement after acknowledging his *Miranda*[5] rights (*id.* at 117, 124-32).
The state played the recorded statement for the trial court during the suppression
hearing. During the statement Petitioner admits he met Quinn at a bar, brought
her back to his room, and three other individuals came over to buy marijuana (*id.* at
130-31). Petitioner stated when the buyers left, he realized that some of his stash
had been stolen, so he got his gun and began shooting at the individuals as they

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

drove away (*id*.). During the statement, Petitioner was coherent, understood the officer's questions, and answered each question intelligently with no signs that he made those statements under coercive conditions. Indeed, he acknowledged that he was being arrested for his actions and that he would likely receive a prison sentence for the crimes he committed. Further, when conducting the search of Petitioner's person, officers found a plastic baggie containing five individually packaged baggies of cannabis in Petitioner's boot, weighing 16 grams (Resp. Ex. A at 3). When officers searched Petitioner's room, officers found a loaded .40 caliber semiautomatic pistol that matched the expended casings; cannabis weighing 494 grams; 114 grams of "THC wax"; a digital scale with cannabis residue; coolers for storing the marijuana, containing another 100 grams of cannabis; and, among other things, a wooden smoking pipe (Resp. Ex. A at 2-3).

After considering the totality of the circumstances surrounding Petitioner's statement to police, the trial court found that "[t]he record evidence [was] just overwhelming, much like a tsunami of evidence showing that this was a freely and voluntarily made decision on [Petitioner's] part" (*id*. at 164). Thus, regardless of the procedural default, the Court cannot review Petitioner's Fourth Amendment claim. Ground One is denied.

### *B. Ground Two*

Petitioner raises six Sub-Claims based on allegations of ineffective assistance of counsel (Doc. 1 at 7). Respondents make a blanket argument that although Petitioner raised these claims in his Rule 3.850 motion, Petitioner now presents the

claims in a vague and conclusory manner, thus, the claims must be dismissed (Resp. at 11-12). Although not a picture of clarity, the Court liberally construes Petitioner's pro se allegations in the Petition as the same claims he raised in this Rule 3.850 motion and addresses each sub-claim in turn.

### i. Sub-Claim One

Petitioner argues that his trial counsel was ineffective for failing to "investigate or p[u]rsue charges against the police, for illegal[ly] coercing confession" (*id.* at 7).

Petitioner raised a similar claim in ground six of his Rule 3.850 motion (Resp. Ex. S at 5-6). In ground six, Petitioner alleged that "counsel failed to investigate police misconduct prior to coercing confession" (*id.* at 5-6). After correctly identifying the standard in *Strickland*, the trial court summarily denied that claim, finding Petitioner "failed to demonstrate that trial counsel's acts were outside the broad range of reasonably competent performance under prevailing professional standards" (Resp. Ex. R at 6). The Fifth DCA affirmed the trial court's summary denial without a written opinion (Resp. Ex. V).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. As discussed, Petitioner was very willing to provide his statement to police. The transcript of his recorded statements shows his speech was coherent and articulate, and he understood his actions and the consequences of providing his statement to police (Resp. Ex. C). Thus, because no evidence supported his allegation that his confession was coerced,

counsel was not deficient for failing to "pursue charges" against the officers. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of *Strickland*, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. The Court denies Sub-Claim One.

### ii. Sub-Claim Two

Petitioner argues that his trial counsel was ineffective for failing to "allow [Petitioner] to ex[]ercise his speedy trial rights" (Doc. 1 at 7). Petitioner raised this claim in his Rule 3.850 motion (Resp. Ex. S at 9). The trial court summarily denied the claim, finding as follows:

> In Ground One of the Defendant's Motion, he alleges his trial counsel was ineffective for not seeking speedy trial. The Defendant claims he did not wish to waive his right to speedy and that trial counsel failed to seek speedy trial. A defendant may waive his "right to a speedy trial, after which the defendant may not assert the statutory right to be tried within the default period." *See Nelson v. State*, 26 So. 3d 570, 576 (Fla. 2010). A waiver is "presumed when a defendant is granted a requested continuance because this action causes a delay in the prosecution that is attributable to the defendant and demonstrates that the defendant is not available for trial." *Id.* "This waiver is construed as an ongoing waiver of speedy trial rights as to all charges which emanate from the same criminal episode, including any newly filed charges arising out of the incident." *Id.* (citations omitted).

> In the instant case, the Defendant did waive speedy trial. *See* attached hereto Arraignment Hearing Transcript pp. 5-6. Upon review of the audio recording of the hearing at the Arraignment Hearing the Public Defender was appointed and the Court inquired about waiving speedy

and the attorney announced waiver. *Id.* At no time did Defendant object to the waiver. *Id.* The Defendant subsequently stated he would seek speedy. *See* attached hereto Status Hearing Transcript pp. 3-4. However, the Court considered it waived based on his prior waiver. Moreover, the Defendant seeking speedy trial is disingenuous. The Defendant demands speedy at the same time he requests his counsel to perform depositions and investigate the case. *See Bryant v. State*, 723 So. 2d 878 (Fla. 5th DCA 1998) (finding that counsel is not ineffective if he/she would have been required to seek speedy trial knowing he/she was unprepared for trial). Therefore, Ground One is without merit.

Resp. Ex. R at 4. The Fifth DCA affirmed the trial court's summary denial without a written opinion (Resp. Ex. V).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court finds that Petitioner has failed to show that even if trial counsel was deficient for failing to invoke Petitioner's Sixth Amendment right to a speedy trial, the outcome of his proceedings would not have been different. *See, e.g.*, *Sanders v. McDonough*, No. 4:07cv206/RH/WCS, 2008 WL 4382802, at *13 (N.D. Fla. Sept. 24, 2008) (finding that the petitioner failed to show prejudice regarding counsel's failure to assert speedy trial right where prosecution could have gone to trial if speedy trial rights had been asserted, since evidence sufficient to convict was available to prosecution soon after petitioner's arrest). Within hours of Petitioner's arrest, Petitioner waived his *Miranda* rights and provided a sworn recorded statement to police confessing to the crimes and admitting to being in possession of the items found in his hotel room. Thus, upon thorough review of the record and the applicable law, the Court finds

that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of *Strickland*, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. This Sub-Claim is denied.

### iii. Sub-Claims Three, Four, and Five

In these Sub-Claims, Petitioner challenges trial counsel's actions regarding the state's "eyewitness" (Doc. 1 at 7). In Sub-Claim Three, he argues "counsel failed to investigate state[']s only eyewitness (wanted felon)" (*id.*). In Sub-Claim Four, Petitioner asserts that "counsel failed to impeach eyewitness, via perjured testimony" (*id.*). And in Sub-Claim Five, Petitioner contends that "counsel failed to investigate state made a deal with eyewitness" (*id.*). Upon review of Petitioner's Reply (Doc. 33 at 6) and his Rule 3.850 motion (Resp. Ex. S), the "eyewitness" Petitioner is referencing is Robert Tessier.

Petitioner raised Sub-Claim Three in grounds two and ten of his Rule 3.850 motion (*id.* at 2-3, 19-10); he raised Sub-Claim Four in ground three (*id.* at 3); and he raised Sub-Claim Five in ground ten (*id.* at 9-10) The trial court summarily denied these claims, finding as follows:

> In Grounds Two and Three, the Defendant alleges his trial counsel failed to subpoena witness Robert Tessier to be present at the suppression hearing for impeachment purposes. The Defendant claims Mr. Tessier observed the Defendant under the influence of alcohol therefore his statements were coerced. These claims are without merit. The purpose of a motion to suppress is to suppress evidence gained improperly or illegally. *See* Fla. R. Crim. P. 3.190(g) (2013). Mr. Tessier in his statement to law enforcement stated that he had a few beers with the Defendant [and]

his girlfriend. *See* attached hereto Transcript Interview of Robert Tessier June 30, 2014 pp. 3-4. Meanwhile, during his deposition Mr. Tessier stated he had met the Defendant and his girlfriend at a bar where he had drinks with them and returned to the hotel. *See* attached hereto Transcript of Deposition of Robert Tessier, pp. 4-7. There is no indication that Mr. Tessier witnessed the Defendant make statements to law enforcement. Therefore, these observations would not serve to impeach law enforcement testimony regarding the Defendant's voluntary statements to law enforcement or his consent to search. Accordingly, Defendant's Grounds Two and Three are conclusively refuted by the record.

. . . .

In Grounds Six, Nine, Ten, and Thirteen the Defendant alleges his trial counsel was ineffective for failing to investigate police misconduct, exculpatory evidence, background of a State's witness, and fingerprint evidence. The Defendant again claims trial counsel failed to investigate statements made by Mr. Tessier . . . . These claims are conclusively refuted by the record through pre-trial deposition, *See* attached hereto Transcript Interview of Robert Tessier June 30, 2014 and Deposition of Robert Tessier October 14, 2014. The Defendant's assertions that Mr. Tessier "made a deal" with the State in exchange for his testimony is without support. Moreover, the fingerprint evidence is not relevant to the instant case. Accordingly, the Defendant has failed to demonstrate that tria[l] counsel's acts were outside the broad range of reasonably competent performance under prevailing professional standards.

Resp. Ex. R at 5-6. The Fifth DCA affirmed the trial court's summary denial without a written opinion (Resp. Ex. V).

The Court addresses these Sub-Claims in accordance with the deferential standard for federal court review of state court adjudications. Initially, if Petitioner argues that trial counsel was ineffective for failing to call Tessier as a witness

during the suppression hearing and impeach the officers' testimony using Tessier's statements that Petitioner was intoxicated on the night of the shooting, such evidence would have been irrelevant to Petitioner's argument for suppression. Petitioner's motion to suppress stemmed from claims that his confession was involuntary because officers engaged in illegal coercive tactics to induce the statement, not that Petitioner was too intoxicated to understand his statements and regardless, Tessier was not privy to the statements Petitioner made to police. Further, if Petitioner claims that Tessier's prior sworn statements would have supported his claim that his confession was coerced because Tessier stated he had been drinking with Petitioner before the shooting, the trial court conducted a thorough evidentiary hearing on Petitioner's motion to suppress and found his statements to police were voluntarily and competently made. Indeed, the transcript of Petitioner's confession shows that his statement was audible, coherent, and voluntary, with no sign that he was so inebriated as to not understand the nature or consequences of his confession.

Further, at trial, Tessier testified that he was also staying at the Bell Villa Hotel at the time of the incident (Resp. Ex. B at 306-07). He stated on the night of the shooting, he had been drinking in his room with Quinn, who he thought was Petitioner's girlfriend, and after she left, he heard people arguing in Petitioner's room (*id.* at 308-12). When Tessier walked out to smoke, he saw Petitioner and Quinn yelling at a small group of people (*id.* at 309-12). He explained that when the

group of individuals got into their truck to drive away, Petitioner pulled out a gun and began shooting at the truck (*id.* at 311-16).

During his trial testimony, Tessier acknowledged he was a four-time convicted felon (*id.* at 316). And before calling him as a witness, the parties advised the trial court that Tessier was previously deemed a sex offender, and that the parties had agreed that defense counsel would not elicit the nature of Tessier's offenses unless he denied the number of convictions at trial (Resp. Ex. B at 16). Trial counsel then tried to impeach Tessier's trial testimony using Tessier's prior deposition testimony, in which Tessier testified that when Petitioner was shooting, Tessier thought Petitioner might have been aiming the gun at the ground (*id.* at 319-20). The state also played Tessier's 911 call for the jury (*id.* at 283- 305). Thus, during deliberations, the jury considered Tessier's prior statements made during that 911 call and portions of his deposition testimony for which he was impeached. As such, Petitioner's allegation that trial counsel acted deficiently in failing to impeach Tessier or for failing to elicit testimony about his criminal record are refuted by the record.

Also, contrary to Petitioner's current claim, there is no evidence that the state made a deal with Tessier for his trial testimony. Yet even assuming trial counsel was ineffective for failing to adequately challenge Tessier's trial testimony or seek to exclude Tessier as a trial witness, Petitioner cannot show that the outcome of his proceedings would have been different had Tessier not testified at trial. Indeed, Petitioner made a sworn statement to police that he shot at the

individuals while trying to sell marijuana and upon a search of his room, officers found direct evidence supporting Petitioner's confession. Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of *Strickland*, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. These Sub-Claims are denied.

### iv. Sub-Claim Six

Petitioner argues that trial counsel was ineffective for "trial severance violations using trial 2 evidence in trial one" (Doc. 1 at 7). In grounds twenty-three, twenty-four, and twenty-five of his Rule 3.850 motion, Petitioner argued that trial counsel was ineffective for failing to challenge the state's use of evidence in both his first trial on his possession of a firearm by a convicted felon charge and the second trial on his other charges (Resp. Ex. S at 5-7). The trial court denied the claims, finding the following:

> Finally, Grounds Twenty-three, Twenty-four and Twenty-five of the motion contain[] allegations that the Defendant's trial counsel was ineffective for failing to object to irrelevant and inflammatory evidence at trial, and the State impaneling two juries. The Defendant alleges the State introduced evidence that made it appear as if he was not being charged with some crimes. He also claims the playing of 911 recording was inflammatory. Moreover, he claims it was prejudicial for him to have two separate juries. The case was severed based on the defense's request due to potential for prejudice. *See* attached hereto Trial Transcript February 2, 2015, Vol. I, pp. 6-8. Therefore, trial counsel had no basis to object to the use of two separate juries.

(Resp. Ex. R at 10-11). The Fifth DCA affirmed the trial court's summary denial without a written opinion (Resp. Ex. V).

The Court addresses this Sub-Claim in accordance with the deferential standard for federal court review of state court adjudications. Trial counsel requested to sever the count of possession of a firearm by a convicted felon to prevent Petitioner from experiencing the potential prejudice of trying all charges together (Resp. Ex. B at 6-8). The state did not object to trial counsel's request and advised the trial court that for the possession of a firearm by a convicted felon charge, he intended on introducing evidence that Petitioner had marijuana in the room, some individuals stole the marijuana, and that prompted him to grab his gun (Resp. Ex. B at 16-17). According to the state, this evidence was relevant and inextricably intertwined with all evidence of the offenses (*id.* at 17). The state also explained, however, that it did not intend to introduce any actual evidence of the marijuana and that it removed from the recorded statement Petitioner's statements about the sale or delivery of drugs, and it would not present evidence about officers collecting the drugs or paraphernalia (*id.*). Rather, the state explained that the only mention of other crimes or the marijuana would be *de minimis* and simply used to add context as to why Petitioner decided to get his firearm (*id.* at 18). Trial counsel objected to the state's proffer, but the trial court overruled the objection and advised the state that it may reference marijuana only in the *de minimis* situation discussed (*id.* at 19). Contrary to Petitioner's allegations here, trial counsel did try to challenge the evidence used during Petitioner's first trial and the state ultimately

agreed to refer to any other illicit evidence in a *de minimis* capacity. Petitioner cannot show that counsel acted deficiently.

Further, even assuming counsel was deficient, Petitioner cannot show that but for trial counsel's alleged failure, the outcome of his proceedings would have been different. Indeed, the evidence supporting each conviction was overwhelming. Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of *Strickland*, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. This Sub-Claim is denied.

### C. Ground Three

Petitioner raises five Sub-Claims based on allegations of prosecutorial misconduct (Doc. 1 at 8). In Sub-Claim One, Petitioner argues that the "prosecutor allowed police to change their testimony from reports" (*id.*). In Sub-Claim Two, Petitioner asserts that "eyewitness allowed to change his testimony from police report, depos, trial" (*id.*). In Sub-Claim Three, Petitioner contends that "state made deal w[ith] eyewitness failed to disclose to defense (on a felony)" (*id.*). In Sub-Claim Four, he argues that "state severed charges then violated by using evidence from

trial 2 in trial 1" (*id.*). And in Sub-Claim Five, Petitioner asserts that "state has misrepresented [gun shot residue][6] to not be presumptive when it was" (*id.*).

Respondents contend that Petitioner failed to raise these claims in state court, and thus these allegations are unexhausted and procedurally defaulted (Resp. at 9). This Court agrees. In his Petition, Petitioner alleged that these claims are exhausted because he raised them in his Rule 3.850 motion and appealed the trial court's summary denial (Doc. 1 at 9). That said, a review of Petitioner's Rule 3.850 motion shows that the only allegations of prosecutorial misconduct were raised as claims of ineffective assistance of trial counsel (Resp. Ex. S at 6-7). Therefore the substantive prosecutorial misconduct claims before the Court were not raised in Petitioner's Rule 3.850 proceedings.[7] Thus, the substantive allegations of prosecutorial misconduct that Petitioner now raises are unexhausted and procedurally defaulted.

In his Reply, Petitioner does not allege facts demonstrating cause for and prejudice from this procedural default, nor does he establish a fundamental

---

[6] In his Petition, Petitioner alleges that the state "misrepresented G.S.P. to not be presumptive when it was" (Doc. 1 at 8). A review of the trial transcript shows that the parties and the trial court regularly refer to "gun shot residue" as "GSR" (Resp. Ex. B at 3-6) and discuss a "presumptive test" related to the GSR (*id.* at 4-5). Thus, the Court infers that when Petitioner references "G.S.P." he intends "GSR" or gunshot residue here.

[7] The Court also notes that in Florida, substantive claims of prosecutorial misconduct must be raised on direct appeal and are not cognizable on collateral review. *See Spencer v. State*, 842 So.2d 52, 60 (Fla. 2003) (finding substantive prosecutorial misconduct claim raised in a rule 3.850 motion were procedurally barred because they were not raised on direct appeal). As a result, had Petitioner raised these substantive claims of prosecutorial misconduct in his Rule 3.850 motion as he alleges, it is likely that the state court would have found those allegations procedurally barred based on an independent state procedural rule.

miscarriage of justice (Doc. 33).[8] In any event, even if these claims were properly exhausted, they lack merit. In his Reply, Petitioner appears to argue that these allegations of prosecutorial misconduct fall under the principles of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), (*id.* at 4). To prove a *Brady* violation, Petitioner must prove that (1) the government possessed evidence favorable to the defense; (2) Petitioner did not possess the evidence and could not have obtained it with any reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material in that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. *United States v. Neufeld*, 154 F. App'x 813, 818 (11th Cir. 2005). "To establish a *Giglio* claim, a habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." *Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1348 (11th Cir. 2011).

Petitioner fails to demonstrate that any of the alleged actions amounted to a *Brady* violation. Petitioner does not claim that his trial counsel did not have possession of this evidence or that it could not have been obtained with any reasonable diligence. Further, and of more import, Petitioner cannot establish that

---

[8] Petitioner's pro se allegations in his Reply might be construed as a for-cause argument that the Court should overlook the procedural default here because his appellate counsel was ineffective for failing to raise these claims during his direct appeal (*see generally* Doc. 33). Even so, the Court need not consider this construed argument because it finds that these claims are ultimately meritless.

any of this evidence was material considering Petitioner's recorded confession played for the jury. Likewise, Petitioner has failed to show a *Giglio* violation. Indeed, absent Tessier's trial testimony or conflicts between the officers' reports and their trial testimony, Petitioner confessed to committing the crimes. And his confession was recorded and played for the jury. As such, Ground Three is denied.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.      The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[9]

**DONE AND ORDERED** at Tampa, Florida, this 9th day of September, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**

Jax-7
C:     Albert Gendron, #C09673
       Counsel of record

---

[9] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.